Eric H. Gibbs (State Bar No. 178658)
David Stein (State Bar No. 257465)
Amy M. Zeman (State Bar No. 273100)
**GIRARD GIBBS LLP**
601 California Street, 14th Floor
San Francisco, California 94104
Telephone: (415) 981-4800
Facsimile: (415) 981-4846
Email: ehg@girardgibbs.com

*Class Counsel*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| DENO MILANO, <br><br> Plaintiff, <br><br> vs. <br><br> INTERSTATE BATTERY SYSTEM OF AMERICA, INC.; INTERSTATE BATTERY SYSTEM INTERNATIONAL, INC., <br><br> Defendants. | Case No. 10-CV-2125-CW <br><br> **PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF FINAL APPROVAL OF AMENDED CLASS ACTION SETTLEMENT AGREEMENT AND PLAINTIFF'S FEE APPLICATION** <br><br> Date:  June 28, 2012 <br> Time:  2:00 p.m. <br> Judge:  Hon. Claudia Wilken |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

In considering whether a proposed class settlement should be approved as fair, reasonable, and adequate, the Ninth Circuit has directed district courts to consider the reaction of the class along with seven other factors. *Churchhill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). Plaintiff previously analyzed all eight factors in his motion for final approval of the parties' proposed class settlement but noted he would address any later-filed objections in a reply filing. Now that the deadline for settlement class members to lodge comments or objections to the settlement has passed, Plaintiff provides this response to the two objections received and submits a proposed Final Order and Judgment for the Court's consideration.

## II. RESPONSE TO OBJECTIONS

### A. Objection of Leonard Wood

Mr. Wood, a former Interstate Batteries dealer, raised the following concerns about the proposed settlement: (i) the amount offered under the settlement does not adequately compensate dealers and customers for the "financial hardship and aggravation" associated with Interstate's warranty, (ii) lack of notice to him by any agent of Interstate, and (iii) a similarity in names shared by class counsel and an Interstate affiliate. (*See* Gibbs Decl. ISO Reply, Exh. 1 (Wood Objection).) Mr. Wood also provided documentation suggesting that one of his customers had paid more for a replacement battery under Interstate's pro rata warranty than for her original warranted battery. Class counsel responds to each concern below, after addressing Mr. Wood's standing to file an objection.

#### 1. Standing

The Court's preliminary approval order permits settlement class members to object to the settlement. (Order ¶ 21.) Nothing in Mr. Wood's objection, however, indicates that he is a settlement class member. Rather, Mr. Wood identifies himself as a former Interstate dealer who sold Interstate Batteries through his auto service facility. The settlement addresses consumer claims, not those of retailers engaged in current or former dealership relationships with Interstate. Unless Mr. Wood, as a consumer, purchased a replacement battery within the class period or retains an unexpired right to replace a warranted battery purchased within the class period, he lacks standing to object.

### 2. Adequacy of Compensation

Mr. Wood's concerns about the adequacy of the settlement appear to be founded on alleged losses he incurred as a dealer administering Interstate's warranty program and his belief regarding the quality of Interstate batteries. Neither is relevant to the merits of this consumer class action settlement, which does not address—or release—any claims Mr. Wood might have arising out of his dealership relationship with Interstate.

### 3. Notice

Mr. Wood did not receive notice of the settlement from Interstate because he was not an Interstate dealer at the time notice was disseminated pursuant to the Court-approved notice plan. According to Interstate's records, he ceased being an authorized Interstate dealer in July 2011. (Gibbs Decl. ISO Reply ¶ 3.) Notice was first issued to Interstate dealers on December 2, 2011, following preliminary approval of the parties' original settlement and a second notice was disseminated to Interstate dealers on April 5, 2012, following preliminary approval of the amended settlement. (*See* Dkt. No. 86 (Keough Decl.) ¶ 23). Mr. Wood's customer, who does appear to be a settlement class member, did receive notice of the settlement. (*See* Gibbs Decl. ISO Reply, Exh. 1 (Wood Objection).)

### 4. Relationship to Interstate Affiliate

Neither Girard Gibbs LLP nor Eric H. Gibbs is related to or affiliated with Joe Gibbs, a former NFL head coach and current owner of a NASCAR racing team sponsored by Interstate Batteries. (Gibbs Decl. ISO Reply ¶ 5.)

### 5. Replacement Battery Transaction by Mr. Wood's Customer

Mr. Wood submitted transaction documents from one of his customers showing an original battery purchase in January 2008 for $97.61 and a replacement battery purchase in June 2011 for $99.90. According to Interstate's records, the customer complained to Interstate at the time of the replacement transaction, and Interstate determined that the dealer had not properly calculated the replacement price—or adjusted the price in any way under the warranty. (Gibbs Decl. ISO Reply ¶ 4.) Interstate reports that as a matter of good customer service, it refunded to the customer the full purchase price of her original battery. (*Id.*) It is unclear, then, why Mr. Wood included these documents with his objection, as the issue appears unrelated to the merits of the settlement.

**B.     Objection of Wayne Barginear**

Mr. Barginear states the following concerns: (i) the settlement unlawfully requires filing a written objection to be heard at the final approval hearing; (ii) notice to settlement class members was inadequate; and (iii) the value of the settlement is insufficient and, in relation, the agreed-upon attorneys' fees are unreasonable. (*See* Dkt. No. 88 (Barginear Objection).)  Class counsel responds to each concern below, and, pursuant to the stipulation approved by the Court on June 1, 2012, may file a supplemental reply following Mr. Barginear's deposition.

### 1.     Written Objection Requirement

The Court's order preliminarily approving the amended settlement lawfully requires settlement class members to submit a written letter to validly object to the settlement. (*See* Order ¶ 21.)  Contrary to Mr. Barginear's assertion, *Devlin v. Scardelletti* does not preclude, or even address, a requirement for written objections. *See Devlin*, 536 U.S. 1, 14 (2006) (holding that class members who appear at a fairness hearing may appeal without first formally intervening in the action).  Rather, a district court has broad discretion to manage proceedings before it. *See Landis v. North Amer. Co.*, 299 U.S. 248, 254 (1936) (noting the "power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."); *see also Seaboard Surety Co. v. Grupo Mexico S.A.B. DE C.V.*, No. 06-CV-0134, 2010 WL 358842, at *1 (D. Ariz. Jan. 25, 2010) (quoting *Landis*).  Requiring written objections by a set deadline is a reasonable exercise of that discretion to assure due consideration of class member feedback and an orderly final approval hearing.

### 2.     Adequacy of Notice

The comprehensive notice plan approved by the Court and implemented by the parties provided more than adequate notice to the certified 23(b)(2) class. *See* Fed. R. Civ. P. 23(c)(2)(A) ("For any class certified under Rule 23(b)(1) or (b)(2), the court may direct appropriate notice to the class."); Fed. R. Civ. P. 23(e)(1) ("The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.").  Notice was broadly disseminated through several mechanisms likely to reach settlement class members: (i) information posted on Interstate's website; (ii) print press releases that were picked up by 155 news outlets; (iii) radio press releases distributed to about 4000 radio stations and picked up by 813 news outlets; (iv) keyword and phrase sponsorships purchased from

Google and Yahoo! and linked to search terms such as "Interstate prorated," "Interstate warranty discount," and "Interstate settlement"; (v) direct notice to over 550 settlement class members who had previously complained to Interstate about the pro-rata warranty or had submitted a claim form under the original settlement; (vi) handouts to authorized Interstate dealers to be made available to customers; and (vii) a website hosted by the settlement administrator. Notice of the original settlement also targeted settlement class members through publication in *USA Today* and banner advertisements on *Car and Driver – Digital*. (*See* Keough Decl. ¶¶ 8-11, 14-15, 17, & 20-23.)

Notice of the settlement effectively reached Mr. Barginear, the customer referenced by objector Leonard Wood, the hundreds of individuals who have submitted claim forms, and over 20,000 visitors to the class settlement website. Many more have likely learned about the lawsuit and settlement, as evidenced by over 10 million keyword and phrase sponsorship impressions and click-through opportunities, almost 2 million *USA Today* readers exposed to the original publication notice, and over 2 millions impressions and click-through opportunities on *Car and Driver – Digital*. (*See* Keough Decl. ¶¶ 10-11 & 16-17.) While individual notice was not reasonably feasible in this case because Interstate does not collect personal information about battery purchasers, notice was reasonably directed to all settlement class members.

### 3. Value of the Settlement

The primary value of the parties' amended settlement is provided via injunctive relief, pursuant to which Interstate will implement a new form of limited warranty based on the manufacturer's suggested retail price rather than "List Price" and disclosed to consumers through improved delivery and publication methods. Interstate's reformed warranty practices should foster competition and inure to consumers' benefit, as consumers will be able to more readily and accurately compare the value of Interstate's warranty to that of other battery distributors.

Secondary value is provided by a two-tier claims program through which settlement class members can receive cash and credit vouchers comparable in amount to the alleged overcharges of $7.50-$9.50 under the old Interstate warranty. By merely signing a certification and release, with no further proof of purchase or eligibility, a settlement class member can obtain a $5 credit voucher for use

1 at Interstate's online battery store or any All Battery Center store.[1]  With proof of a replacement battery
2 purchase, a settlement class member can obtain an $8.50 check card (or $12 credit voucher, if preferred)
3 for each of up to ten replacement batteries.  Rather than "rebate coupons," as Mr. Barginear suggests,
4 the credit vouchers cover the full retail price of many Interstate products, such as a 4-pack of AAA
5 batteries ($3.49), a 6-volt lantern battery ($3.99), and a 9-volt battery ($4.49), to name a few.

6   In light of the broad injunctive relief provided by the settlement, which has been costly and time-
7 consuming for Interstate to implement across its many independent authorized dealers, and the cash and
8 credit vouchers available under the claims programs, the settlement provides significant value to the
9 class.

## III. CONCLUSION

For the reasons stated above and in his initial final approval papers, Plaintiff requests that the Court find the parties' amended class action settlement to be fair, reasonable, and adequate.

DATED:  June 7, 2012                                   Respectfully submitted,

**GIRARD GIBBS LLP**

By:     /s/ Eric H. Gibbs
Eric H. Gibbs
David Stein
Amy M. Zeman
601 California Street, 14th Floor
San Francisco, California 94104
Telephone: (415) 981-4800
Facsimile:  (415) 981-4846

*Attorneys for Plaintiff*

---

[1] Mr. Barginear incongruously notes that "[i]f a service department discovers something wrong with a vehicle brought in under [] the settlement," a class member could be induced through aggressive up-selling to spend money in excess of the reimbursement.  Neither Interstate's online battery store nor the All Battery Center locations provide vehicle repair services, and aggressive salesmanship is inconsistent with the online sales format.